UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JULIAN MARCUS RAVEN**,

    Plaintiff,

    v.

**KIM SAJET,** in her capacity as National Portrait Gallery Director,

    Defendant.

Case No. 22-cv-2809 (CRC)

## OPINION AND ORDER

Plaintiff Julian Marcus Raven, proceeding pro se, alleges that Defendant Kim Sajet, the Director of the Smithsonian Institution's National Portrait Gallery ("NPG"), violated the First Amendment by preventing him from reading or interacting with her Twitter account, which he claims is a public forum used to share and discuss information related to the NPG. Sajet moves to dismiss Raven's complaint, arguing, among other things, that the First Amendment does not apply here because her use of Twitter is not state action. This fall, the United States Supreme Court will hear two cases concerning whether a public official's activity on a personal social media account constitutes state action. In the interest of promoting judicial economy and avoiding unnecessary discovery and litigation, the Court will deny Sajet's motion to dismiss without prejudice and stay the case pending further guidance from the Supreme Court.

Raven alleges that Sajet uses her Twitter account—@KimSajet—as a public forum that "has become an important channel for news about the government run National Portrait Gallery." Compl. ¶ 36; see also id. ¶¶ 1, 3. Specifically, he claims, "[Sajet] uses the account to make formal Smithsonian announcements, report on meetings, upcoming shows and general Smithsonian information etc." Id. ¶ 3. As examples of these purported uses, Raven's complaint references tweets by Sajet that discuss upcoming exhibits and events at the NPG. Id. at 5–6, 14–15. One

such example is Sajet's August 23, 2022 tweet that "Portraiture is powerful @smithsoniannpg #PortraitofaNation #Portraitgala #myNPG," which included a link to an article announcing that Hilary Clinton and Alicia Keys would be presenters at the 2022 National Portrait Gallery Gala.  Id. at 5.  Another shows Sajet reposting a NPG tweet about the unveiling of President Obama and First Lady Michelle Obama's portraits: "Tomorrow we're unveiling portraits of President @BarackObama and Mrs. @MichelleObama! Our courtyard will be closed until 2 p.m., and the Café will be closed all day. Tune into the livestream on our website starting at 10 a.m., and see the portraits for yourself on Feb. 13! #myNPG." Id. at 14.  Raven further asserts that the account was created specifically for the NPG director and that Sajet posted under the handle "@NPGDirector" until she changed the username in 2017 or 2018.  Id. at ¶¶ 27, 29–31.

Raven further asserts that he was prevented from interacting with the account, or "blocked" in social media terms, by Sajet for his efforts to "expos[e] the corruption at the Smithsonian National Portrait Gallery and Smithsonian in general." Id. ¶ 1; see also id. ¶¶ 4–5, 39–42.  Raven alleges viewpoint discrimination in violation of the First Amendment and requests an injunction to reverse the ban, along with litigation fees.  Id. ¶¶ 1, 3–5, 39–42; see also id. at 19.

Sajet does not contest that she blocked Raven from interacting with her Twitter account. Instead, she moves to dismiss on the grounds that the complaint fails to plausibly allege state action, a public forum, or viewpoint discrimination.[1]

---

[1] Sajet also argues that Raven lacks standing to sue her because he has not plausibly alleged causation.  Mot. to Dismiss at 4–5.  According to Sajet, Raven has sued her in her official capacity, which is akin to suing the NPG, but has failed to allege facts attributing liability to the institution. Id.; see Compl. ¶ 9 (Sajet "is sued in her official capacity only.").  Dismissal is not warranted on this ground.  Similar cases against public officials for their decisions to block critics on social media have successfully been brought against the defendant in their official capacity.  See Knight First Amend. Inst. at Colum. Univ. v. Trump, 928 F.3d 226 (2d Cir. 2019), cert. granted, judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Colum. Univ., 141 S. Ct. 1220 (2021); Campbell v. Reisch, 986 F.3d 822 (8th Cir. 2021).  Even assuming Sajet is correct, Raven could simply move to amend the complaint to sue Sajet in her individual capacity.  See e.g.,

It is well established that the "Free Speech Clause prohibits only *governmental* abridgment of speech." Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019) (emphasis in original). This case presents an emerging issue at the intersection of social media and free speech: whether a public official engages in state action by blocking a critic from interacting with a personal social media account used to share government-related information. The United States Courts of Appeals are split on how to resolve this question and the Supreme Court has granted certiorari in two cases where it is presented. See O'Connor-Ratcliff v. Garnier, 143 S. Ct. 1779 (U.S. Apr. 24, 2023) (cert. granted on appeal from Ninth Circuit); Lindke v. Freed, 143 S. Ct. 1780 (U.S. Apr. 24, 2023) (cert. granted on appeal from Sixth Circuit).

The majority approach, applied in some form by the Second, Fourth, Eighth, and Ninth Circuits, looks to whether the account has an official appearance and serves a governmental purpose such that the account carries the authority of the state. See Garnier v. O'Connor-Ratcliff, 41 F.4th 1158, 1173 (9th Cir. 2022) ("[C]ourts should look to considerations such as 'how the official describes and uses the account,' 'to whom features of the account are made available,' and how members of the public and government officials 'regard and treat the account.'" (quoting Knight First Amend. Inst. at Colum. Univ. v. Trump, 928 F.3d 226, 236 (2d Cir. 2019), cert. granted, judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Colum. Univ., 141 S. Ct. 1220 (2021))); see also Davison v. Randall, 912 F.3d 666, 680–81 (4th Cir. 2019) (public official's blocking of a critic from her social media account was state action because her account was used "as a tool of governance" to share government information and contained "the trappings of her office," including the official's title and links to other official websites); Campbell

---

Garnier v. O'Connor-Ratcliff, 41 F.4th 1158 (9th Cir. 2022) (suing public officials in their individual capacity for blocking critic on social media); see also Davison v. Randall, 912 F.3d 666 (4th Cir. 2019) (suing public official in her official and individual capacity for blocking critic on social media); Lindke v. Freed, 37 F.4th 1199 (6th Cir. 2022) (same).

v. Reisch, 986 F.3d 822, 826 (8th Cir. 2021) ("A private account can turn into a governmental one if it becomes an organ of official business[.]").

The minority approach, applied by the Sixth Circuit, finds state action only if the public official's managing of the account is done "pursuant to his actual or apparent duties" or "using [the official's] state authority," such as by relying on government resources or employees to operate the account. Lindke v. Freed, 37 F.4th 1199, 1204 (6th Cir. 2022) (city manager's blocking of a constituent from social media was not state action because the account belonged to the individual officer holder, the manager was not required to maintain the account by statute, and no government resources or employees were used to manage the account). The D.C. Circuit has not had occasion to weigh in on the proper test.

Given the differing approaches by the circuit courts, the Court declines to decide definitively at this juncture which test applies and whether Raven's complaint satisfies it. That being said, the complaint would likely survive a motion to dismiss under the majority approach.[2] Raven alleges, with supporting examples from Sajet's account, that she uses the account to distribute information and foster conversation about the NPG and to provide links to official Smithsonian sites and other official government accounts. Compl. ¶¶ 3, 33–35. At this early stage of the litigation, before the Court has been able to review the full scope of the account's usage, such allegations are likely sufficient to plausibly suggest that Sajet has used her account as a "tool of governance" and that blocking critics from accessing the account could plausibly constitute state action. The complaint is unlikely to satisfy the minority approach, however, as Raven has not

---

[2] Raven's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

alleged facts to suggest that managing the social media account is Sajet's duty as director or that she relies on government resources or employees to manage it.[3]

Accordingly, to avoid intrusive discovery and potentially unnecessary proceedings to resolve this fact-intensive dispute, the Court will deny Sajet's motion to dismiss without prejudice and stay the case pending further guidance from the Supreme Court.

For these reasons, it is hereby

**ORDERED** that [5] Defendant's Motion to Dismiss is DENIED without prejudice. It is further

**ORDERED** that the case is stayed until the Supreme Court issues rulings in O'Connor-Ratcliff v. Garnier and Lindke v. Freed. It is further

**ORDERED** that Defendant shall respond to the complaint within 30 days after the Supreme Court's rulings in those cases.

**SO ORDERED**.

                                                                CHRISTOPHER R. COOPER
                                                               United States District Judge

Date: July 5, 2023

---

[3] Aside from the "state action" question, which the Court defers deciding, Raven has sufficiently alleged viewpoint discrimination. The complaint plausibly alleges that Raven was blocked because he criticized Sajet and sent a tweet "exposing the corruption at the Smithsonian National Portrait Gallery and Smithsonian in general." Compl. ¶ 1. And because viewpoint discrimination is illegal in public and nonpublic forums alike, that aspect of Raven's complaint is sufficiently pled regardless of how the Court classifies Sajet's Twitter account. See Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469–70 (2009) (viewpoint discrimination is prohibited in traditional, designated, and limited public forums); Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985) (viewpoint discrimination prohibited in nonpublic forums).