UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIAN MARCUS RAVEN, <br><br> Plaintiff, <br><br> v. <br><br> KIM SAJET, <br> Director, National Portrait Gallery, <br><br> Defendant. | Civil Action No. 22-2809 (CRC) |

**DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO DISMISS
AND OPPOSITION TO RAVEN'S MOTION FOR TRIAL BY JURY**

Defendant Kim Sajet ("Sajet") replies to Plaintiff Julian Raven's ("Raven") Opposition to the Defendant's Memorandum of Points and Authorities in Support of the Defendant's Motion to Dismiss, ECF No. 14 ("Opp'n"). Because Raven has not met the *Lindke* test, his Complaint fails. *See Lindke v. Freed*, 601 U.S. 187, 190 (2024). Raven readily admits that Sajet's Twitter account contains a disclaimer noting the private nature of the account. This entitles Sajet to a heavy presumption that she did not speak for the National Portrait Gallery (the "Gallery") when she blocked Raven from viewing her private @KimSajet Twitter account. Raven's arguments do not come close to overcoming that heavy presumption. Therefore, Sajet respectfully requests that this Court grant her motion to dismiss and dismiss the case.

Further, Sajet opposes Raven's Motion for Trial by Jury and Damages ("Pl.'s Mot."), ECF No. 15, and his request for discovery, Opp'n at 16-17. Those requests are moot if the Court grants Sajet's Motion to Dismiss, ECF No. 13. Regardless, Raven is not entitled to a trial by jury and has failed to comply with the rules governing discovery. His motion should be denied.

I.      **Raven Has Not Met the *Lindke* Test.**

*Lindke* requires Raven to establish two elements: (1) that Sajet possessed actual authority to speak on the government's behalf when she managed the @KimSajet Twitter account in September 2022, and (2) that she purported to exercise that governmental authority when she allegedly blocked Raven from accessing the @KimSajet Twitter account on September 1, 2022. *See Lindke*, 601 U.S. at 190.  Raven's Opposition fails to show how his Complaint makes those showings.

*First*, Raven asserts that Sajet possessed the authority to speak on the government's behalf by virtue of her position as Gallery Director.  Opp'n at 10.  *Lindke* rejected an approach based on implied authority; rather, the authority to speak on the government's behalf must be "rooted in written law or longstanding custom to speak for the [government]." *Lindke*, 601 U.S. at 201.  The Supreme Court explained that "[d]etermining the scope of an official's power requires careful attention to the relevant statute, ordinance, regulation, custom, or usage." *Id*.

Here, Raven points to no law, regulation, or custom discussing the Gallery Director's duties or responsibilities.  Rather, Raven asks the Court to infer such authority because Sajet "wield[s] influence and power that implies governmental endorsement or representation[,]" especially "when communicating about matters pertaining to the Gallery" on account of her position as the Gallery's Director.  Opp'n at 10.  He concludes that this "suggest[s] that Director Sajet's so-called private social media activity could reasonably be attributed to the government because of the actual authority [Sajet] possesses." *Id*.  This, according to Raven, is unlike a janitor, whose only "governmental authority" is "over his mop and bucket." *Id*.  Under *Lindke*, the Court cannot accept Raven's invitation: "The inquiry is not whether making official announcements *could* fit within

the job description; it is whether making official announcements is *actually* part of the job that the State entrusted the official to do." *Lindke*, 601 U.S. at 201 (emphasis in original).

Raven includes screenshots of Sajet's Instagram account. Opp'n at 4-6. He does not explain the relevance to this case of that Instagram account. He only asserts that Sajet uses it to speak on the Gallery's behalf, and that her Instagram account lacks a disclaimer similar to the @KimSajet Twitter account. *Id*. at 4-5. Even if true, these allegations are outside the Complaint and the Court should not consider them unless it converts Sajet's Motion to Dismiss into a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d). And even if the Court considers the operation of the Instagram page to be government speech, that fact alone does not convert Sajet's personal Twitter account—the sole subject of this litigation—into a government account. The focus of this case is on Sajet's Twitter account—not on her Instagram account. Raven is the master of his own Complaint, and he only alleges a free speech violation based on Sajet blocking him from her Twitter account. He does not allege that Sajet blocked him from following her Instagram account. Regardless, *Lindke* foreclosed any argument concerning the appearance of Sajet's Twitter account, let alone her Instagram account, because "[p]rivate action—no matter how 'official' it looks— lacks the necessary lineage" to make that private action attributable to the government. *See Lindke*, 601 U.S. at 198. Raven has not established that Sajet had the authority to speak on the Gallery's behalf.

*Second*, Raven asserts that Sajet exercised her alleged governmental authority every time she tweeted from the @NPGDirector handle, years before the event at issue in this case. Opp'n at 11-12. According to him, the change in handle name and the addition of a disclaimer did not change the Twitter account into a private account. *Id*. That is because, according to Raven, Sajet continued to tweet about "art, portraiture, or the Smithsonian[.]" *Id*. at 12. Whether Sajet

3

exercised state authority when she tweeted from the @NPGDirector handle is irrelevant. Raven readily admits that that handle has not existed since February 2018. Compl. ¶ 30. He only complains that he was blocked from viewing the @KimSajet handle in September 2022, more than four years later. *See id*. ¶ 1. He argues that there was "no announcement declared on [the day the handle changed] that all the tweets would be personal and private from then on[.]" Opp'n at 11-12. *Lindke* only requires a label or disclaimer to afford a heavy presumption "that all of the points on [her] page were personal." 601 U.S. at 202. Raven admits that at the time he was blocked, the @KimSajet handle included a conspicuous disclaimer: "All opinions expressed are my own." *See id*. ¶ 31; Opp'n at 12 (stating that the @KimSajet handle includes "a single, dubious, blanket disclaimer"). No other announcement is needed.

Raven questions whether "a private disclaimer converts all posts by the government official into [First] Amendment untouchable opinions and expressions." Opp'n at 13. *Lindke* says that a disclaimer is sufficient. 601 U.S. at 202. As the Supreme Court explained, the inclusion of such a disclaimer provides important context to determine the circumstances in which the official engaged in speech. *Id*. 201-04. That disclaimer communicated to the world that Sajet's opinions were her own and she did not purport to speak on the Gallery's behalf, akin to the school board president speaking with friends at a backyard barbecue. *See id*. at 201. At the barbecue, nobody questions that the school board president does not speak in his official capacity because he does not include a disclaimer at the end of each statement he makes. So too here, the disclaimer on the Twitter page sufficiently noted to the world, and to Raven, the private nature of the @KimSajet account.

Raven's remaining arguments fail. He argues that blocking an individual from a social media site is absolutely prohibited and that the Court must review each and every tweet separately.

4

Opp'n at 13-16. Certainly, blocking operates on a page-wide basis. *Lindke*, 601 U.S. at 204. Before the Court engages in a lengthy review of posts to determine whether any one post could be considered state action, however, the Court must first find that Sajet "fail[ed] to keep personal posts in a clearly designated personal account[.]" *Id*. Because the @KimSajet account was obviously personal at the time Raven was blocked, no such inquiry is needed.

Raven also cites to excerpts of Smithsonian Directive 103, Smithsonian Institution's Standards of Conduct. Opp'n at 4-8. According to him, Sajet's speech on her personal Twitter account can be imputed to the government because Sajet required "specific permission from the different authoritative departments at the Smithsonian" to manage her personal Twitter account. *Id*. at 3. Smithsonian Directive 103 has no bearing on this case. Raven cites to Section 2, which prohibits using Smithsonian employment for private gain, but does not address public speaking about the Gallery. *See id*. at 4. Smithsonian Directive 103 does not regulate Sajet's private Twitter account, and she requires no approval from the Smithsonian to operate that account. Raven's arguments to the contrary are without basis in fact or law and should be rejected.

Moreover, nothing in Smithsonian Directive 103 requires Sajet, or any other Smithsonian employee, to relinquish her own First Amendment free speech rights. Raven cites to Sections 3, 5, and 8, highlighting provisions requiring compliance with laws and requiring approval for certain outside activities. Opp'n at 7-8. But again, nothing in those provisions addresses the authority of the Gallery Director to speak about the Gallery. Any suggestion that these provisions require Sajet to seek approval prior to engaging in private speech are unfounded because "public employees do not renounce their citizenship when they accept employment" and the Supreme Court has time and again cautioned that "public employers may not condition employment on the relinquishment of constitutional rights." *Lane v. Franks*, 573 U.S. 228, 236 (2014) (citing *Connick v. Myers*,

461 U.S. 138, 142 (1983); *Pickering v. Board of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568, (1968); *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 605 (1967)).

Finally, Raven offers a hypothetical, where on December 1, 2016, Smithsonian Secretary Lonnie Bunch blocks him from accessing the @SmithsonianSec Twitter account. Opp'n at 1-2. That hypothetical is wholly irrelevant to the current case. Raven does not complain that he was blocked from viewing the @SmithsonianSec account or any other official account. *See generally* Compl. He complains that Sajet blocked him from viewing her personal @KimSajet account, which contained a conspicuous disclaimer, and was operated as a private account for at least four years prior to the alleged blocking. The Court should heavily presume that Sajet used the @KimSajet account as her personal account, *see Lindke*, 601 U.S. at 202, and Raven offers nothing that comes close to overcoming that heavy presumption.

## II.     Raven is Not Entitled to a Trial by Jury.

Raven moves for a trial by jury and demands nominal damages of $900. Pl.'s Mot. He also requests discovery. Opp'n at 16-17. He is not entitled to any of this relief and Sajet also opposes his motion for trial by jury.

*First*, Raven is not entitled to discovery. "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)[.]" Fed. R. Civ. P. 26(d)(1). The parties have not conferred regarding discovery, nor has Raven requested such conferral. Further, courts in this District have emphasized that "discovery typically occurs after the resolution of motions to dismiss," because "requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could force the defendants to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 165

(D.D.C 2015) (cleaned up).  This is especially true here because Plaintiff alleges the existence of "thousands of tweets on the @NPGDirector or @KimSajet" Twitter accounts and asks the Court to "determine which ones were official action."  Opp'n at 11, 14.  The Court need not do so.  Simply put, "the 'doors of discovery' are not unlocked for a plaintiff armed with nothing more than conclusions."  *In re Quinteros*, 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  Raven is not entitled to discovery.

*Second*, Raven is not entitled to a jury trial.  He invokes the Seventh Amendment.  *See* Opp'n at 16; Pl.'s Mot. at 1.  The Supreme Court has instructed that "the plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute."  *Lehman v. Nakshian*, 453 U.S. 156, 168 (1981); *see also Egbert v. Boule*, 596 U.S. 482, 490-92 (2022) (declining to create *Bivens* liability for federal employees for alleged First Amendment violations absent Congressional action); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to create an implied remedy in a First Amendment suit against a federal employer).  Raven has not identified any such statute.  Further, he primarily seeks declaratory and injunctive relief, which are possible equitable remedies for constitutional violations that are established, and a jury is unavailable for an equitable action.  *See Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64 F.4th 1354, 1364-67 (D.C. Cir. 2023) (affirming grant of declaratory judgment and denial of injunctive relief in a First Amendment case).  Plaintiff's demand for nominal damages to recover the costs of this lawsuit does not suffice to convert his equitable suit into one at law.  *See* Pl.'s Mot. at 2.

Raven also failed to confer with Sajet's counsel prior to filing his motion, in violation of Local Rule 7(m), which requires parties appearing *pro se* to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief

7

sought[.]" LCvR 7(m).  Further, Raven's motion does not include "a statement that the required discussion occurred, and a statement as to whether the motion is opposed." *Id.*  These are sufficient grounds to deny his motion.  *See Mack v. Aspen of D.C., Inc.*, Civ. A. No. 15-1973 (RJL), 2018 WL 564558, at *7 n.10 (D.D.C. Jan. 24, 2018) ("Mack did not comply with Local Civil Rule 7(m)'s meet and confer requirement—a failure that warrants denial of her motion."); *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 25 (D.D.C. 2017) ("This Court routinely denies non-dispositive motions for failure to comply with Rule 7(m)."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) (parties' "motion to compel must be denied because they failed to confer with opposing counsel in an attempt to resolve the dispute before filing a non-dispositive motion"); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 12 (D.D.C. 2000) ("One additional ground exists for denying Plaintiff's motion. Plaintiff failed to comply with Local Rule 7.1(m) (duty to confer with opposing counsel on non-dispositive motions). . . . [I]t is clear that a separate motion to strike is not a dispositive motion.").

       For all these reasons, Raven's motion for trial by jury and request for discovery should be denied.

\* \* \*

## CONCLUSION

For the foregoing reasons, Sajet respectfully requests that this Court grant Sajet's Motion to Dismiss and dismiss the complaint. Sajet further requests that this Court deny Raven's Motion for Trial by Jury, and deny his request for discovery.

| | |
|---|---|
| Dated: April 29, 2024<br>Washington, D.C. | Respectfully submitted,<br><br>MATTHEW M. GRAVES, D.C. Bar #481052<br>United States Attorney<br><br>BRIAN P. HUDAK<br>Chief, Civil Division<br><br>By:     /s/ *Dimitar P. Georgiev*<br>DIMITAR P. GEORGIEV, D.C. Bar #1735756<br>Assistant United States Attorney<br>601 D Street, NW<br>Washington, DC 20530<br>(202) 815-8654<br><br>*Counsel for the United States of America* |

## CERTIFICATE OF SERVICE

I certify that on April 29, 2024, that I caused a true and correct copy of the Reply in Support of Defendant's Motion to Dismiss to be served upon Plaintiff via e-mail and first-class United States mail, marked for delivery to:

Julian Marcus Raven
105 Capital Street Apt. #302
Lynchburg, VA 24502

I also emailed that same date a copy of this filing to: julianmarcusraven@gmail.com and info@julianraven.com

>  /s/ *Dimitar P. Georgiev*
> DIMITAR P. GEORGIEV, D.C. Bar #1735756
> Assistant United States Attorney